UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **JEREMY WHITE** | * | **CIVIL ACTION NO. 09-0838** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Jeremy White, born July 14, 1975, filed an application for supplemental security income on January 2, 2004, alleging a disability onset date of February 27, 2003, due to a right brachial plexus injury, seizure disorder secondary to head trauma, second degree burns, and right arm problems.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and

conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Leonard Chabert Hospital dated March 8, 2003 to January 22, 2004**. Claimant complained of right arm pain after falling at work following a black out on February 24, 2003. (Tr. 186-87). A CT scan of the head was normal. (Tr. 191). Nerve conduction and EMG studies performed on August 25, 2003 revealed a right brachial plexus injury with evidence of regeneration and partial recovery. (Tr. 176).

**(2) Records from Teche Action Clinic dated November 12, 2003 to June 1, 2004**. On November 12, 2003, claimant presented after an emergency room visit for a second degree burn on his left upper arm associated with a seizure. (Tr. 148). He had been newly diagnosed with grand mal seizures. The assessment was secondary burns of the left upper extremity and seizure disorder. His Dilantin was increased to 300 mg.

On April 15, 2004, Dr. Moses Kitakule wrote that claimant's diagnosis was seizure disorder and anxiety. (Tr. 138). His prognosis was poor, and he was considered disabled and unemployable. Dr. Kitakule stated that claimant would be considered a risk to himself and others. (Tr. 137).

**(3) Consultative Examination by Dr. Harold A. Heitkamp dated May 29, 2003**. Claimant complained that he could not lift his right arm and had low back pain. (Tr. 192). He stated that he was taking down scaffolds at work when he slipped and fell, hitting his head and losing consciousness.

On examination, claimant had a normal gait. (Tr. 193). He had no spasm. His range of motion in the cervical spine was limited. His right shoulder had definite atrophy and marked weakness in abduction and adduction. He had good hand strength, grasping ability, dexterity, and sensation.

On lumbar exam, claimant could squat fully, get up on his toes and rock heel-toe. He had no spasm, but was slightly tender over the left sacroiliac joint. Range of motion was limited. Straight leg raising tests were negative.

Dr. Heitkamp's impression was atrophy of the deltoid muscle of the right shoulder with marked limitation of motion, probably secondary to a right brachial plexus, and mild to moderate left sacroiliitis. (Tr. 194). He opined that claimant could do no work involving lifting with his right arm, could sit and stand to tolerance, and could do no heavy lifting over 40 pounds and five to 10 pounds repetitively with his left arm.

**(4) Consultative Examination by Dr. John Canterbury dated March 27, 2004**.  Claimant complained of seizures, third-degree burns on the upper extremities, right arm injury, depression, and daily headaches.  (Tr. 195-96).  He was able to perform most of his activities of daily living, including dressing and feeding himself, with difficulty at times secondary to his upper extremity weakness.  (Tr. 195).  His medications included Cyclobenzaprine, Phenytoin, and a pain patch for his lower back.  (Tr. 196).

On examination, claimant ambulated without difficulty.  He was able to get on and off of the exam table and up and out of the chair without problems.  He was able to dress and undress himself.

Claimant had decreased grip strength in the hands.  (Tr. 197).  He had decreased range of motion of the shoulder.  Neurologically, his motor strength was 4/5 in the upper extremities and 5/5 in the lower extremities.

Dr. Canterbury's impression was seizures, bilateral arm weakness, and a burn injury.  (Tr. 198). He determined that claimant was able to sit, stand, and walk.  He was only able to lift light to moderately heavy objects secondary to his upper extremity weakness and decreased range of motion.  Hearing, speaking, and handling of objects appeared to be intact.  He found that overall, claimant

appeared to be mostly limited by his decreased range of motion and decreased ability to use his arms.

**(5) Records from Teche Action Board, Inc. dated February 22, 2006**. Dr. Chakshu Gautam stated that claimant was being treated for seizure disorder. (Tr. 217). He was advised to stop all activities and to avoid working with hazardous machinery.

**(6) Records from Morgan City Orthopedic Clinic dated September 21, 2004**. Claimant presented with limited function in the right arm secondary to weakness and stiffness in his right shoulder. (Tr. 219). On examination, claimant complained of a lot of pain with any range of motion in the right shoulder. His motion was markedly limited by pain. He had no significant muscle atrophy or crepitus in the shoulder. Cervical exam revealed mild restriction of motion with tenderness diffusely in the posterior musculature, but no spasm. Neurological exam of the upper extremities was normal.

X-rays showed mild disc space narrowing and anterior spurs at C5-6. Shoulder x-rays were within normal limits.

Dr. Jeffrey Fitter's impression was mild cervical degenerative disease and probable rotator cuff tendonitis in the right shoulder. He noted that claimant's degenerative disease was somewhat unusual in a 29-year-old patient. He opined

that claimant's conditions made it quite difficult for him to perform well in a manual occupation, especially one requiring overhead work with the right arm. He stated that claimant's chronic condition should not limit his abilities in office work and business activities. (Tr. 220).

In the Estimated Functional Capacity Form, Dr. Fitter opined that claimant could lift and carry up to 34 pounds occasionally and up to 24 pounds frequently. (Tr. 221). He could push/pull with the left arm frequently, and never reach above shoulder level with the right arm. He stated that claimant should be able to sit and sit/stand continuously, and stand/walk for eight hours with rests. He could use his hands and feet for repetitive actions, except that he could not do a firm grasp with the right hand. (Tr. 222). He had mild restrictions of daily activities. He could return to work full-time with the above restrictions.

**(7) Records from Teche Regional Medical Center dated May 26, 2002 to March 1, 2003**. On February 27, 2003, claimant reported that he was at work when he had a seizure and fell flat forward. (Tr. 281). He complained of right shoulder pain. Dr. John Osborne's assessment was axillary nerve neuropraxia.

On June 6, 2003, claimant was seen for lower back pain. (Tr. 336). He also complained of right arm numbness. The assessment was lower back pain, for which he was prescribed Flexeril. (Tr. 338).

**(8) Records from Teche Action Clinic dated June 22, 2004 to April 20, 2005**.  Claimant was non-compliant with his seizure medications.  (Tr. 381, 390-91).  He also drank alcohol.  (Tr. 382).  He was strongly advised to stop using alcohol and driving.  (Tr. 381-82).

EMG studies taken on August 6, 2004, showed significant improvement of his right brachial plexus injury.  (Tr. 399).

**(9) Psychological Evaluation by Henry J. Lagarde, Ph.D., dated September 8, 2006**.  Claimant stated that he was able to bathe and dress himself.  (Tr. 418).  However, he could not bend down because of nerve damage.  He spent most of the day watching television, and no longer assisted with chores.  He said that his wife and children "make me mad" since his accident.  He no longer spent time with friends.  His medications included Gabapentin, Dilantin, Lexapro, and Naproxen.  (Tr. 419).

On examination, claimant manifested good attention and concentration.  His memory was mildly impaired.  He was oriented in all spheres, with a fairly good knowledge of current events.  Abstract thinking was moderately impaired, and abstract reasoning was significantly impaired.  His affect was depressed, and he never smiled.  Perceptual/motor coordination was fair.  Capacity for judgment and insight were impaired.

7

Claimant noted that he had received substance abuse treatment approximately six months prior. He stated that he had been fighting with his wife and had been arrested, evidently for battery.

IQ testing revealed a full-scale IQ score of 72, verbal score of 72, and performance score of 77. (Tr. 420). These scores reflected intellectual capability solidly in a borderline range. Persistence and concentration were good. Overall adaptive capability was consistent with intellectual functioning in a low borderline range. (Tr. 421).

In summary, Dr. Lagarde found that claimant manifested intellectual capability in a borderline range, and adaptive capability in a severe mental retardation range. However, he determined that claimant did not accurately report adaptive capabilities, which Dr. Lagarde estimated to be in a low borderline range. He noted that claimant did manifest some confusion about interpersonal relationships, including possible delusional thought process. He stated that claimant was currently depressed on a fairly regular basis.

Overall, Dr. Legarde concluded that claimant was "deliberately exaggerating weaknesses to prevent as problematic a clinical picture as possible." (Tr. 422). He also found it possible that claimant was not correctly reporting his drug history. He stated that it was not possible to provide an accurate diagnosis

nor to provide accurate opinion about work capability. His reason for that conclusion was that claimant was reportedly going to a business college, which would not support his very low adaptive scores, and also shed doubt on some of his scores on the WAIS-III.

**(10) Records from Teche Action Board, Inc. dated March 2, 2006 to May 16, 2007**. Claimant's seizure disorder was stable on his current medications. (Tr. 428-34). His degenerative disc disease at C5-6 with mild neuroforaminal narrowing warranted conservative management. (Tr. 433).

**(11) Records from Teche Action Clinic dated January 26, 2006 to April 16, 2008**. On December 3, 2007, claimant acknowledged that he had not been taking Dilantin. (Tr. 438). On April 16, 2008, he had decreased episodes of seizures on his medications. (Tr. 440). His right shoulder pain was stable. (Tr. 436).

**(12) Claimant's Administrative Hearing Testimony**. At the hearing on May 18, 2007, claimant was 31 years old.[1] (Tr. 481). He had graduated high school, and had two years of college studying computers. (Tr. 491).

---

[1] A hearing was held on June 27, 2006, but was terminated in order for claimant to undergo a mental evaluation. (Tr. 458-479).

9

Claimant testified that he had worked in construction and offshore, rigging and in the galley. (Tr. 490). He had last worked in 2003 offshore for about a week. (Tr. 463). He reported that he fell at work while taking down a scaffolding, injuring his head and right shoulder. (Tr. 462-63; 482). He stated that since the accident, he could not lift his right arm overhead. (Tr. 487).

Regarding other complaints, claimant testified that he had headaches and depression. (Tr. 488). He was taking Lexapro for depression, Tylenol PM for headaches, and seizure medication. (Tr. 465, 488). He testified that he still had seizures three or four times a month despite taking his medicine. (Tr. 483, 487). He also complained of pain in his lower back. (Tr. 489).

As to restrictions, claimant testified that he had difficulty with climbing steps because of balance. (Tr. 461). He stated that he no longer drove because of his seizures. (Tr. 483). He had trouble eating, because he dropped his fork sometimes.

Additionally, claimant said that he needed help with dressing and grooming, because he could not raise his arm. (Tr. 468, 483, 485). He stated that he was nervous around people. (Tr. 490).

Regarding activities, claimant reported that he had last had an alcoholic beverage in 2003. (Tr. 492). He stated that he spent most of the day watching

TV.  (Tr. 489).  He also sat with his wife in her brother's store sometimes.

**(13) Administrative Hearing Testimony of Beth Drury, Vocational Expert ("VE")**.  Ms. Drury testified that claimant had no prior relevant work experience.  (Tr. 493).  The ALJ posed a hypothetical in which he asked the VE to assume a claimant who was a younger individual with a high school diploma and no prior relevant work; who could perform a limited range of light work with seizure precautions, occasional posturals, limited reach and grip strength, and normal fine and gross hand movements.  (Tr. 494).  In response, Ms. Drury testified that he could work as an usher, of which there were 213 jobs statewide and 21,591 nationally; inspector, of which there were 4,303 light positions statewide and 454,113 nationally, and sedentary information clerk, of which there were 7,298 jobs statewide and 17,071 nationally.

**(14) The ALJ's Findings are Entitled to Deference**.  Claimant argues that: (1) the residual functional capacity finding is not supported by substantial evidence because the ALJ failed to factor in claimant's borderline intellectual functioning, and (2) the work identified by the vocational expert is inadequately identified or not suitable for claimant because of his borderline intellectual functioning.

First, claimant argues that the ALJ failed to identify his borderline intellectual functioning ("BIF") as a significant non-exertional impairment. [rec. doc. 11, p. 3]. The record reflects that claimant did not allege BIF as an impairment in his application. However, at the first hearing, the ALJ ordered a mental evaluation based on his head injury, seizure disorder and depression. (Tr. 467-75).

In the post-hearing consultative psychological evaluation, Dr. Lagarde found that claimant manifested intellectual capability in a borderline range, but did not accurately report adaptive capabilities, which Dr. Lagarde estimated to be "exaggerating weaknesses to prevent as problematic a clinical picture as possible." (Tr. 422). He found that it was not possible to provide an accurate diagnosis nor to provide accurate opinion about work capability, because claimant was "reportedly going to a business college, which again would not support the very low Adaptive Scores," and "also sheds doubt on some of the Scale Scores of the WAIS-III." Claimant has cited no reliable evidence to support his claim that his "borderline intellectual functioning" interfered with his ability to function in the workplace. Thus, this argument lacks merit.

Claimant further asserts that the VE failed to identify work which was suitable for him because of his BIF. Specifically, he argues that it was error for

the ALJ to have failed to include BIF in his hypothetical to the VE. [rec. doc. 11, p. 5]. However, it is well established that the ALJ is not bound by VE testimony which is based on evidentiary assumptions ultimately rejected by the ALJ. *See Owens v. Heckler,* 770 F.2d 1276, 1282 (5th Cir.1985); *Falls v. Apfel*, 2000 WL 329233, *7 (E.D. La. 2000). The only medical expert to express an opinion regarding BIF was Dr. Lagarde, who found that claimant was exaggerating his symptoms and presenting contradictory information. (Tr. 422). As the ALJ's hypotheticals to the vocational expert reasonably incorporated all disabilities of the claimant recognized by the ALJ, and the claimant had the opportunity to correct deficiencies in the ALJ's question, the ALJ's findings are entitled to deference. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

In any event, the evidence shows that claimant's impairments did not affect his ability to work. The medical records show that his seizures were controlled with medication. (Tr. 428-34). If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). However, the record reflects that claimant was repeatedly non-compliant with his medications. (Tr. 381, 390-

91).  It is well established that failure to follow prescribed medical treatment precludes an award of benefits.  20 C.F.R. § 404.1530(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990).  Thus, claimant's claim for disability lacks merit.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED**

**PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

    Signed August 19, 2010, at Lafayette, Louisiana.

                                                                             _____

                                                                             C. MICHAEL HILL
                                                                        UNITED STATES MAGISTRATE JUDGE